Morning. My name is Zane Wilson, counsel for Russell Bartlett. I'd like to reserve four minutes for rebuttal. There are three actions or rulings in the district court's decision that kind of cut across all of the issues in this case. And I want to focus on those to start out with. First is the district court's conclusion that Mr. Bartlett unlawfully interfered with an investigation. Second is the district court's conclusion, even in face of the video, as to the location of Mr. Bartlett's hands at the time that Officer Nieves started to lunge and shove Mr. Bartlett. Lastly is the district court's kind of ignoring in this decision of the inferences and the reasonable inferences that can arise from the evidence given the timing and the events that took place at the time that Officer Wade elected to shove Mr. Bartlett. To start with the first issue, the district court accepted the state's characterization that Mr. Bartlett unlawfully interfered with an investigation and that that somehow justified what took place in this case. In Houston v. Hill, the United States Supreme Court said clearly and unequivocally that a citizen has a First Amendment right to question what a police officer is doing. In this case, viewing the evidence in the light most favorable to Mr. Bartlett, all that Mr. Bartlett did was approach this officer in a peaceful and nonthreatening manner and say to him, I don't believe you have the right to speak to the minor who's accompanying me to this event without his parent being present. Well, you conceded, I believe, that Mr. Bartlett approached the officer very closely and used a loud voice, which he said it was necessary in order to be heard over the background noise. Is that correct? What we conceded is that this was an event where there was a very loud noise in the background. Mr. Bartlett approached the officer as necessary to communicate to the officer. Well, from the perspective of the officer, I mean, Mr. Bartlett may have understood he was nonthreatening, but from the perspective of the officer, who I think you'd have to concede has reason to be concerned about underage drinking at this particular event, is trying to investigate that and has this guy come up, approach him closely and start speaking in a very loud voice. From the perspective of a reasonable officer, how is that not interfering with what the officer is trying lawfully to do? Well, I guess you have a number of questions in there. Let me try to break them down. First, what exactly is the alleged interference? You have a constitutional right to express your opinion. And the context, and a reasonable officer takes into account context, and the reason that you don't view approaching somebody and expressing your opinion to them in the same way at a concert versus in a church. And in this case, Mr. Bartlett approached. He was about twice the distance that Officer Waite was from the minor that he was chatting with. And the evidence is undisputed that whenever Officer Waite decides to lunge and shove Mr. Bartlett, he has to step forward, go like this, and hit Mr. Bartlett in the chest. And so was there anything that was threatening about Mr. Bartlett's posture or anything else that he did in the context of this event? Absolutely not. That's your view. I'm not so sure it's going to be the view of a reasonable officer at the time and place of the event. Well, I guess I would say this. So what tells us that it is your view is the one that the reasonable officer should have given the time and place of the event? Two things I would say. To hold otherwise would be to say that any time you approach an officer to speak with them at a concert, you are placing them in fear of an assault because you approach them in a manner that you can effectively communicate to them, number one. Number two, testimony from Officer Pascoia, who was the supervisor at this event, and I want to, because I think this is very important, I want to actually quote what took place here. I asked Officer Pascoia. Can you give us the page number? This is in the record at 282. If Officer Waite hadn't felt the use, the need to use force prior to Officer Nieves' arrival, can you give me some explanation for why it is he could have reasonably elected to use force after Officer Nieves arrives? Bear in mind the video in this case shows that the assault by Officer Waite is prompted by the arrival of another police officer with a cameraman behind him. You see Officer Waite. His view goes from Mr. Bartlett. Officer Waite's standing there calmly. Mr. Bart's standing there calmly. There's nothing threatening about anybody's posture or anybody that's taken place. Officer Waite's view in the enhanced video goes from Mr. Bartlett, looks up, sees Officer Nieves arrive, returns his gaze to Mr. Bartlett, lunges at him, tells him to get back, and shoves him. And so the fact that Officer Waite elected to assault Mr. Bartlett at the very time that another police officer arrived on the scene in very close proximity, we asked the lieutenant who was in charge of this event whether or not he could give any reasonable explanation for that. And his answer was, I can't. So what actually, when you view the record most favorable to Mr. Bartlett, what prompts this assault is the arrival of another officer with a cameraman behind him. And that is what causes Officer Waite to initiate this assault. And so we asked a reasonable police officer, his supervisor, can you explain that? Can you give us any reasonable explanation for why the arrival of another officer prompts this assault? His answer was he could not. And I would submit to the court there is no reasonable explanation, other than that for whatever reason, when the other officer arrives with a camera, these gentlemen decide that they don't want to have this occur anymore. And they elect to assault Mr. Bartlett. That's the reasonable inference from that evidence. Regardless of that, the state argues that Officer Waite was alone and fearful of Mr. Bartlett when this assault took place. That is simply not supported by the record. In any way, shape, or form. This assault occurs because another officer arrives at the scene with a cameraman behind him. So did I answer your Honor's question? Well, you responded to the subject. I can't say you satisfied my concern, but that's another issue. Well, I would say this in terms of the reasonable officer. The court has plenty of cases that say a reasonable officer makes decisions based on the context of the events. The entire set of circumstances. And to equate an individual's actions in a loud, noisy context with an individual's actions where there is no noise is not reasonable. Well, that part's true, but whose perspective are we supposed to be viewing this through? The perspective of a reasonable police officer. Okay. And so the reasonable police officer has to take into account, yes, it is loud. Yes, it is noisy. Yes, there is likely underage drinking going on. And he's trying to investigate that. And somebody comes barging up and tries to make an issue saying, in efforts, you can't talk to this minor, which legally is not true. But that's Mr. Bergen's perspective and opinion. So he states it from the perspective of the reasonable officer. I don't want this guy interfering with my effort to investigate the underage drinking. And I'm talking to a minor, which Mr. Bergen appears to confirm by asserting that he's a minor. Mr. Bartlett, are you speaking of, Your Honor? Excuse me, Mr. Bartlett. Too many Bs today. Mr. Bartlett appears to confirm by referring to him as a minor. I'm not so sure I'm not feeling threatened or harassed by what the person coming up is doing. And if that's the perspective we're supposed to take. Well, let me give you another bit of evidence. Look at the video. Officer Waite is a reasonable officer, I would assume. We'd like to assume that. And what does the video show? Does the video show that Officer Waite is in any way fearful of Mr. Bartlett? Does the video show that Officer Waite is apprehensive of Mr. Bartlett? Does the video show that Officer Waite is fearful of Mr. Bartlett assaulting him at the time when this takes place? Absolutely not. What it shows is two people engaged in a peaceful conversation. And Mr. Bartlett simply looking at Officer Waite, intently listening to what Officer Waite is saying. Contrary to Officer Waite's sworn testimony, that Mr. Bartlett was ranting and raving and screaming and hollering. And that Mr. Bartlett, what initiated, according to Officer Waite, what initiates this assault. Is that Mr. Bartlett suddenly closes on him. Gets close to his chest. Is in his face. He shoves Mr. Bartlett. Mr. Bartlett then comes back at him again. All patently documented false statements. 100% inaccurate. The level of dishonesty in the police office in this case is appalling. Absolutely appalling. Now, Counsel, I appreciate the arguments you're making on a Fourth Amendment ground. But there's another hurdle you have to clear here, which is qualified immunity. What is the clear authority that told these officers at this time, in 2014, I believe it was, that what they were doing would violate someone's constitutional rights? What's the case? Well, first off, I would say Houston v. Hill, which says you have a right to peacefully challenge what an officer is doing without being assaulted for it. Supreme Court needs us to be more specific than Houston v. Hill. Secondly, I would say in Duran v. City of Douglas, in that case the court held that flipping an officer off, being abusive in that manner, is not the basis to assault somebody and arrest somebody. And I would cite the court to two cases in terms of the excessive force, Blankenhorn v. City of Orange, and Young v. County of Los Angeles. Particularly in Young v. County of Los Angeles, the court held that whenever we're talking about relatively low-level offenses, misdemeanor offenses, and in the absence of you being reasonably perceived as assaultive of the police officer or a threat to the police officer, that you should precede the use of force by a verbal indication. That would have been absolutely appropriate for the police officer in this case to say, Mr. Bartlett, step back. Mr. Bartlett, I don't like how close you are to me here. I want to proceed with this investigation. And in fact, Officer Waite tries to justify his behavior in that manner, but it's disputed on the record. Mr. Bartlett's affidavit was that I was not threatening. I was not close. I did not speak over Officer Waite. And he never asked me to step back or otherwise gave me any directive whatsoever until the second that he lunges at me and says step back as he shoves me. Now in Blankenhorn, though, Blankenhorn was tackled and punched on the ground when he was detained. I've watched the video in this case, and obviously there's physical contact, there's no doubt about that. But it didn't seem to be in the same category as Blankenhorn. I'm not sure that's the best case for you. Well, I think Young v. County of Los Angeles is a better case. Okay. And it gets to the point here of whether or not there was any force that would have been appropriate for this officer to use without it being preceded by a verbal warning to Mr. Bartlett. And that's what I think Young v. County of Los Angeles stands for, is that when we're talking about petty stuff, relatively minor stuff, you need to precede an assault on somebody by a verbal indication. I'm running very short on time, so let me just highlight a couple of things here. In terms of this interference with investigation thing, there's no crime of that in Alaska. The court put a label on it, but it didn't explain what conduct constituted it. The only conduct that was undisputed is the conduct that's protected in Houston v. Hill of the right of Mr. Bartlett to express his disagreement with what a police officer is doing. And this, about the alleged interference, highlights the misrepresentations by these police officers. There's no audio in this case, contrary to 95% of the cases in the state of Alaska. And yet we have a situation here where the police officers continually misrepresent to the district attorney what the evidence is in the case. And this alleged interference highlights it. The district attorney came back to Officer Waite and said, Officer Waite, do you know whether or not this minor even knew who Mr. Bartlett was? Officer Waite then claims, without audio, he didn't audio record this alleged meeting, he says, yeah, I spoke with the two individuals who were there, and they both told me they had no idea who Mr. Bartlett is. Because he wants to portray Mr. Bartlett as an interloper who has no stake in this event. What's the evidence from the minor and Mr. Crack, the other individuals who were there? They've been friends with Mr. Bartlett for years. They never had any contact with Officer Waite whatsoever. Where he asked them about whether or not they knew Mr. Bartlett, and had he done so, they would have told him the truth, which is that they did know Mr. Bartlett. So they manipulated the police officer, and we've detailed it with the district attorney, with numerous erroneous facts. Let me highlight one other thing in reference to that. The district attorney didn't file the complaint in this case. If you look at the record, it's in, I think, 14 through 18 of the police officer filed the complaint in this case, not the district attorney. The only event the district attorney ever did was continue on with the prosecuting the case and ultimately dismissing the case. So we would ask, I'll try to reserve my last few seconds here for rebuttal, we would ask that this dismissal on summary judge be reversed and Mr. Bartlett be entitled to a trial. Thank you, counsel. May it please the Court. I'm Ruth Botstein, Senior Assistant Attorney General for the State of Alaska, on behalf of Alaska State Troopers Nieves and Waite. Qualified immunity protects all but the plainly incompetent and those who knowingly violate the law. Mr. Bartlett, in this case, bears the burden to show the existence of precedent, placing the constitutional and statutory questions beyond debate. He has not and cannot meet this burden. Here are the facts of the case that I believe are true. Counsel, I have a question for you. Why isn't it intentional, knowing false arrest, when the affidavit attached to the complaint in this case is full of fabrications and facts, alleged facts, that are plainly contradicted by the video that happened to have been taken? That's pretty serious to me. And all of their reports are just laden with false statements about the incident. Isn't that evidence of knowledge? I don't believe so, Your Honor. I mean, it's certainly fair to say that the police reports have some inaccuracies and inconsistencies, and that is common in these tense, rapidly evolving situations. I mean, the officers write the reports. This was not their video. They didn't have access to it when they wrote it. They're writing reports based on the video. They wrote a report that they falsified what happened, not knowing that a video existed that would prove that the affidavit attached to the complaint was riddled with falsehoods. Your Honor, again, I think falsehoods is going too far. There are some inconsistencies, but inconsistencies are not necessarily, or even false statements, if they're not material to the elements of the charges, don't affect, don't transform them into falsehoods, right? And the case I would cite on that, excuse me, Your Honor, we know in the Harper case, the court held misstatements must be material to charges, and these minor inaccuracies and omissions aren't material, and don't transform these affidavits into something that the prosecutor can't reasonably rely on, or that can't be the basis for an arrest or conviction. What we do know, the facts that are undisputed, right? We know this is a challenging police environment. We know there are increased safety risks here. This is a rural, crowded event with a lot of drinking. It's the middle of the night. We know that the troopers are generally outnumbered by the throngs of partiers. We know Mr. Bartlett approaches Trooper Waite, gets within arm's reach, and that Trooper Waite needs to stop his investigation to deal with the person who has approached him. We know that Trooper Waite felt threatened, and we know that qualified immunity gives police officers the ability to make reasonable mistakes, and he believed he was about to be assaulted. Whether or not that is in fact true, the law gives him, as the police officer on the scene facing this, the right to act on that reasonable belief. Mr. Bartlett says, well, these are legal things. It's legal to question a police officer, and that's true. I would point the court to Ramirez against City of Buena Park, where the circuit held, although each fact standing alone is completely legal, conduct innocent in the eyes of the untrained may carry entirely different messages to the experienced or trained observer, and that is the case here. Mr. Bartlett relies on cases that deal with pure speech as opposed to conduct. For example, the Anna Skett case, which concerns a single phone call. This doesn't clearly establish the law of what actions the police could take when faced with a man like Mr. Bartlett, who is in the trooper's face and is causing him to be in fear that he will be assaulted. The other thing I would say in response to your question, which I think goes to the malicious prosecution, is we know that the prosecutor still to this day believes that there is probable cause for these offenses. We've identified four different offenses, and we have record evidence that, you know, a sitting prosecutor in Alaska believes there is probable cause for these. We know he did an investigation. He sought out the video. He watched it. He thought that it corroborated the allegations of the troopers and that it supported the case. So there may be reasonable. Why then did he dismiss the charges? The testimony was budget cuts. Trying this case would have involved going back to the rural area. That's expensive for the state, and the state has a big budget problem. And we presume, I mean, there's no basis to presume that the prosecutor's statements are inaccurate or that he doesn't exercise his discretion in good faith. We've identified four different offenses that we believe there was probable cause. Mr. Bartlett needs to show that clearly established law would have prevented the troopers from arresting on any of them, and he hasn't made that showing. He may have shown that there is reasonable dispute about whether these charges were appropriate, about whether there was probable cause, but the standard is that no reasonable officer could believe there's probable cause, and he simply hasn't made that showing here. Now, one of the claims in this case, as I understand it, it's a retaliation First Amendment claim, that the officer in retaliation for Mr. Bartlett expressing his views arrested him effectively. And looking at the district court's order, I was a little confused by its rationale, because I think there is case law saying that even if there is probable cause to arrest somebody, you can't do it to retaliate against First Amendment rights. I think it's a case called Ford v. City of Yakima. I wanted to give you an opportunity to comment on that particular claim, the First Amendment retaliation and how the district court handled it. Sure, Your Honor. Ninth Circuit precedent is that the existence of probable cause negates the retaliatory arrest claim, that even if there's some colorable allegation of that, if there is probable cause, then the arrest is valid. What case is that? I say it because there's language in Ford v. City of Yakima, 706 F. 3rd, 1188, which I think contradicts what you just said, and there's a Supreme Court case called Wrightley, which talks about this issue in the context of qualified immunity. So if you have a case that says that's not true, I'd love to know what it is. It's not coming to me, Your Honor. But let's assume that's true, Your Honor. I mean, even if that's true, there simply isn't an adequate basis here to find the malicious basis. I mean, we know there was probable cause to arrest on grounds that have nothing to do with speech that merely are based on misdemeanor conduct. Oh, that there was probable cause doesn't necessarily mean the opposite. I mean, probable cause to arrest doesn't automatically lead to arrest. Officers exercise judgment to decide whether an arrest is appropriate in a given case. And even if there's probable cause, and I think that's what Judge Owens was referring to in our courts Ford case, if probable cause doesn't automatically mean there can't be unlawful retaliation and if there's evidence that maybe the officers went forward with the arrest because they didn't like what Mr. Bartlett had done before and not agreeing to talk with them, wouldn't that make out a case for retaliation for exercise of the privilege not to talk to the police officer? Well, it could, but the evidence here is very weak, Your Honor. I mean, you know, the earlier conversation is really very tenuous to assert that based on the earlier— What is it that Mr. Navis is supposed to have said? I bet you wish you'd talk to me now. That's a disputed allegation. Well, we're at summary judgment. Isn't that evidence that the motivation might have included retaliation for not having agreed to speak to the officer? We are at summary judgment, Your Honor, but the qualified immunity law protects police officers when they have to make these quick, fast, evolving judgments on the ground. But if the officer did, in fact, make the statement suggesting his motivation was Mr. Bartlett's refusal to speak, how does qualified immunity protect that? If we accept that as being the set of facts, it's qualified immunity at summary judgment. We take the set of facts and say, okay, could a reasonable officer have known this was improper? If that's the state of facts, how could a reasonable officer not have known it was improper? They know they're not supposed to arrest people because they decide not to talk to the police officer? Sure, Your Honor. I mean, but, you know, we've asserted four different charges, some of which don't have anything to do with speech, right? So, I mean, in order for Mr. Bartlett to show that, he would need to show that the retaliatory motive would infect all of these charges, and he hasn't done that. What case says that? I'm sorry, Your Honor? What case says what you just said? You just said that there were four charges, and it's burdens on him to show that all four were in retaliation for speech. And I'm just kind of curious what case says that. I say this because there's this, I may disagree with it, but there's this case called Ford v. City of Yakima, which suggests no matter how much probable cause there is, if the arrest or the action taken is to retaliate on First Amendment grounds, then there's a cause of action. And so I really would like an answer to that case. Why doesn't that case or that principle present a problem? Again, I'm putting aside my own views as to whether that's right. It's the law and the circuit, so how do you respond to that? Is there another case out there that says no? For example, there's a case called Wren, which has to do with the police officers pulling over on the side of the highway, and you only look to the objective facts. You don't look to subjective intent of the officers. Wren seems to be somewhat in conflict with Ford v. City of Yakima, but Ford has decided after Wren. So I'm trying to think of a way why that's not a problem for you in this case. Sure. And I'm extrapolating from the holdings of Davin, Peck, and Alford, which isn't a First Amendment case, but talks about probable cause and talks about, you know, making sure there needs to be probable cause for one offense. It doesn't even need to be a closely related offense to that which the arrest was for, but there needs to be something, and so I think analogizing from that, I mean he needs to show that there wasn't a basis to arrest, you know, other than a retaliatory motive on any of these charges, right? And we've conceded under this hypothetical, and Ford says even if there's probable cause to arrest, that doesn't mean there can't be a claim for retaliation. I'm not sure it really advances the cause very much to say, well, there are multiple grounds, multiple offenses he could have been charged with. The bottom line is there was only one arrest, and the question becomes, what is it that says these officers have qualified immunity in a situation where there's at least some evidence that their motivation to take action against Mr. Bartlett was that he wouldn't talk to them, or wouldn't talk to them when they wanted to talk to him, and later he did talk to them when they didn't want him to talk to him. It gets confusing. Yeah, and I do think there's a tension between these cases. I mean, the qualified immunity probable cause analysis is exclusively objective and looks to the facts that we can establish based on, without respect to the subjective motivation. So I agree with Judge Owens that there is a tension between that and the very idea that even where there is probable cause or reasonably arguable probable cause on an objective basis, we are nevertheless going to penalize police officers for that. And I would submit to the court that in this case, you know, the mere allegation of that shouldn't be enough to rob these officers of qualified immunity when we do have that very clear objective justification. I want to briefly touch on the excessive force allegations as well. This was a very minimal use of force here. Mr. Bartlett hasn't even alleged that he was injured, even temporarily. We know from circuit law that the lack of any injury is an indication that force was not excessive. And we have cited numerous cases to the court in similar situations, not identical situations, but similar ones where more force was used and officers were granted qualified immunity. Mr. Bartlett has the burden to show that it is beyond debate that force was excessive, and he hasn't made that showing. The push was a very limited use of force under the Sorgan and Jimenez cases, did only what it was intended to do and no more. Mr. Bartlett didn't even drop his beer after the push. And the controlled takedown, similarly, I would point to the Sheridan's case, which summarizes Ninth Circuit precedent as saying a controlled takedown maneuver that doesn't cause injury is not excessive force in the circuit. And in that case, actually, the arrestee was knocked unconscious and the officer still got qualified immunity on the ground that that was a mistake. Mr. Bartlett wasn't knocked unconscious or injured in any way. Okay. I see my time is about to expire. If there are no further questions, we would ask that the court affirm the district court's judgment. Thank you very much, counsel. We'll go two minutes. Thank you for giving me a little extra time there. Let's start with the excessive force issue. One of the pieces of evidence in this case was the policy of the Alaska State Troopers that said that you don't use any force unless you've attempted verbal force, verbal direction to start out with, number one, or number two, that it's obvious under the circumstances that that use of verbal force would be ineffective in accomplishing your result. In this case, while Officer Waite certainly claims certain things, the evidence is very much contradicted and hotly contested about whether or not Officer Waite ever attempted any verbal direction to Mr. Bartlett in any way, shape, or form, in contradiction to his own police department policy. So I would just point that out. On the issue of the district attorney and his involvement in this case, the State's argument is basically, well, the district attorney submitted an affidavit that he said everything's fine, so therefore you're stuck with it. Well, that ignores the deposition testimony of Mr. Beard, where he acknowledged that the only information he had to make decisions on was the misleading police reports and complaint that were filed by the officer in this case, number one. Number two, that when the video did come to light, through our actions, not theirs, after we'd asked them about the video, they didn't know where it was, couldn't find it, never had any indication of where it came from, we find it, that he acknowledged the video was clearly, as it is, in contradiction to what the officer said in many aspects. And then the fact that, well, allegedly the State dismissed this case involving an assault and all this parade of horribles that they've said Mr. Bartlett is guilty of, because they didn't have the money to go 150 miles down the road and try the case. That is incredible on its face. And, you know, we don't believe it, and I don't think a reasonable person would believe it. Just to touch on a few other things, the State says it's uncontradicted, we know that Trooper Waite felt threatened. I don't know how the State knows that. When I look at the video, it doesn't look threatened to me. There's no evidence in the video that Mr. Bartlett is doing anything that's threatened. Mr. Bartlett is twice the distance from Trooper Waite that Trooper Waite elected to be from the minor he was interviewing. And we know that Trooper Waite had to close on Mr. Bartlett to get close enough to him to shove him and assault him. Those are not the actions of somebody who is reasonably threatened by Mr. Bartlett's mere presence, standing there looking at him, listening to him. I want to get to the location of the hand issue. Let's start wrapping it up, though, okay? I will. The court found that Mr. Bartlett's hand was in near proximity to Officer Waite's face at the time of the alleged assault. When you look at that video, what the video shows is that you can't see Mr. Bartlett's hands until after Trooper Waite lunges and shoves Mr. Bartlett. As Mr. Bartlett starts to reel backwards, his hand comes up. And the court found that was reasonably construed as harassment of the police officer. That's like saying if I walk up to you and punch you in the face, when you fall on my feet, you're harassing me. That's not a reasonable conclusion from the evidence in our view. I appreciate the extra time. Thank you very much. Thank you both, counsel, for your argument today. This matter is submitted.
judges: Wardlaw, Clifton, Owens